UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No.: 3:19-CR-29-TAV-DCP |
| CHERYL BROUSSARD, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's Emergency Motion for Release Pending Sentencing [Doc. 43]. Defendant apparently seeks release pursuant to 18 U.S.C § 3143(a) and in support, cites the non-violent nature of her offense, her "risk for severe illness or death" if she were to contract COVID-19, and the danger the virus poses to incarcerated persons generally [*Id.*]. The government has responded in opposition [Doc. 45].[1] Because defendant has not established by clear and convincing evidence that she is not likely to flee or pose a danger to the safety of any other person or the community if released, the Court will **DENY** defendant's motion.

**I.    Background**

Following her initial appearance on the five wire fraud charges in this case, defendant was released on conditions pending trial [Docs. 9, 10]. The conditions of her

---

[1] Defendant states in her motion [Doc. 43 ¶ 9] that her counsel conferred with counsel for the government and that the government does not object to defendant's release. In light of the government's opposition to the motion, however, defense counsel appears to have been mistaken, and defendant has not filed a reply to the government's response clarifying whether this was the case. For these reasons, the Court considers the motion opposed and will address the arguments offered by the government in opposition to defendant's motion herein.

pretrial release required, inter alia, that she submit to the supervision of the United States Probation Office in the Southern District of Florida, that she continue or actively seek employment, and that she refrain from working as an investment advisor for financial matters, otherwise engaging in financial matters for clients, and opening any additional lines of credit [Doc. 10 p. 2].

On March 20, 2019, about one week after defendant was put on pretrial supervision, defendant's supervising officer conducted a home visit at defendant's residence [Doc. 21 p. 2]. According to the officer, during this visit, defendant refused to provide the officer with employment verification and disclosed that she was operating websites providing financial advising, namely stock investment tips [*Id.*]. The officer advised defendant that her operation of these sites constituted a violation of the conditions of her pretrial supervision, and, according to the officer, defendant agreed to disable the sites and discontinue any financial advising [*Id.*].

On May 14, 2019, however, defendant's supervising officer became aware that defendant continued to operate websites offering financial advising [*Id.* at 3]. According to the officer, when he asked defendant whether she had continued to operate websites that enabled her to conduct business as a financial advisor, defendant denied that she had [*Id.*]. The officer then directed defendant to verify her self-employment by providing a bank statement from her business account, but according to the officer, defendant provided a redacted bank statement which did not reveal pertinent information (i.e., the name of her business, the account number, and the address of the business) [*Id.*]. After the officer

2

advised defendant that she would be in violation of her conditions of release if she refused to provide the requested information, the officer reported, defendant provided an original bank statement from "Jet Set Girl International LLC," which apparently showed multiple deposits that, according to defendant, were mostly received through her "femfreedom.com" website [*Id.*].

Believing that defendant was in violation of her conditions of release by continuing to operate websites offering financial advising, the United States Probation Office filed a Petition for Action on Conditions of Pretrial Release [Doc. 21] in late May 2019. The parties appeared before the Honorable Debra C. Poplin, United States Magistrate Judge, on June 19, 2019, for an initial appearance on the petition [Doc. 23]. After hearing argument by counsel and the testimony of defendant, Judge Poplin amended the conditions of defendant's pretrial release, ordering that she shutdown or deactivate certain websites, not activate or set up any new business or coaching websites, and give the probation officer access to certain other websites [*Id.*].

On August 14, 2019, defendant appeared before the undersigned for a change-of-plea hearing [Docs. 25, 29]. Defendant entered a plea of guilty to Count Two of the Indictment in this case, charging wire fraud in violation of 18 U.S.C. § 1343 [Doc. 29]. Defendant remained released on bond pending sentencing [*Id.*].

In November 2019, however, a second Petition for Action on Conditions of Pretrial Release was filed, and a warrant issued for her arrest [*Id.*]. The petition included the following allegations: Defendant applied for and received a $150,000 loan to purchase an

investment property—although notably, defendant's credit report did not indicate that she had recently applied for any loans; Defendant failed to fully disclose her assets during her presentence interview; Defendant did not report that she had been evicted and a civil judgment had been entered against her; Defendant failed to timely return to the Southern District of Florida after traveling to California; And defendant would not return her supervising officer's calls, text messages, or emails as instructed [Doc. 30 p. 2].

The parties appeared before Judge Poplin on March 6, 2020, for an initial appearance on the second petition [Doc. 36]. At the hearing, the government argued in support of revocation of the conditions of release and that the defendant be detained pending sentencing [Doc. 38 p. 4–5; Doc. 40 p. 2]. Defendant did not oppose detention [Doc. 38 p. 4; Doc. 40 p. 3], but she did testify and contest the allegations in the petition [Doc. 38 p. 15–38; Doc. 40 p. 3]. Judge Poplin found by clear and convincing evidence that defendant had violated conditions of her release as described in the Petition [Doc. 40 p. 3]. Additionally, she found that there was no condition or combination of conditions of release that would assure that she would not pose a danger to the safety of any other person or the community or that she was unlikely to abide by any condition or combination of conditions of release [*Id.* (citing 18 U.S.C. § 3148(b)(1)–(2))]. Accordingly, Judge Poplin revoked defendant's supervision, and defendant was remanded to custody [*Id.* at 3–4].

Defendant's sentencing was originally set for January 16, 2020, [Doc. 29] but on a motion to continue sentencing by defendant [Doc. 33] was reset to March 27, 2020 [Doc. 34]. On March 20, 2020, defendant's sentencing was cancelled in light of, among other

4

things, the Court's Standing Order No. 20-06 (providing that for a period of time hearings were to be held via teleconference pursuant to the CARES Act). Defendant's sentencing was then reset to take place via video teleconference on May 13, 2020, but this hearing was again cancelled due to defendant's declining to consent to proceed with sentencing via video teleconference on that date. Defendant's sentencing will be reset as an in-person hearing in due course.

Defendant is currently awaiting sentencing at the Knox County Jail [Doc. 43 p. 1]. She reports that she is a sixty-four (64) year-old black female with a long history of hypertension and respiratory infections [*Id.* at 2]. In light of these factors, as well as the heightened risk that COVID-19 poses to incarcerated persons, she now moves for release [*Id.*].

## II. Analysis

The Bail Reform Act, specifically section 3143(a)(1), generally requires that a person who has been found guilty of an offense and who is awaiting sentencing be detained. 18 U.S.C. § 3143(a)(1); *see also United States v. Bowman*, 98 F.3d 1343 (6th Cir. 1996) (table opinion) ("Release is no longer favored once guilt of a crime has been established." (citing *United States v. Vance*, 851 F.2d 166, 170 (6th Cir. 1988)). Here, defendant was adjudged guilty of wire fraud at her August 14, 2019 plea hearing, and she now awaits sentencing. Accordingly, defendant is subject to detention pursuant to section 3143(a)(1).

A person subject to detention pursuant to section 3143(a)(1) may, however, be ordered released under appropriate conditions if the Court "finds by clear and convincing

5

Case 3:19-cr-00029-TAV-DCP   Document 46   Filed 06/23/20   Page 5 of 9   PageID #: 342

evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." *Id.* "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c); *see also Bowman*, 98 F.3d 1343 ("Section 3143(a)(1) creates a presumption against release which the defendant must overcome."). As the Court will discuss, because defendant has failed to carry this burden, that is, establish by clear and convincing evidence that she is not likely to flee or pose a danger to the safety of any other person or the community if released, she must remain detained.

### A. Risk of Flight

Defendant has not established by clear and convincing evidence that she is not likely to flee. Defendant fails to cite or discuss the applicable statutory standard for release in her motion generally, and with respect to the issue of risk of flight specifically, she has not offered any argument or evidence—let alone clear and convincing evidence—in support of a finding that she is not a flight risk. Indeed, she does not address her risk of flight in her motion at all. Defendant's failure to establish that she is not likely to flee alone is a basis for denial.

Moreover, the evidence weighs in favor of finding that defendant is in fact a flight risk. Specifically, defendant's alleged conduct while on pretrial supervision, namely her refusal to return from a cross-country trip at the agreed-upon time and subsequent failure to contact her supervising officer as instructed, indicates that she may be likely to flee.

6

Additionally, as the government notes [Doc. 45 p. 5], given the stage of this proceeding, defendant has some incentive to flee.  In particular, in light of the calculation of defendant's guidelines in her presentence report [Doc. 31] and the government's filing of its sentencing memorandum [Doc. 39], in which it recommends a two-level obstruction enhancement and declines to move for an additional one-level acceptance-of-responsibility reduction, defendant is now aware that she faces a sentence of incarceration that is perhaps, as the government describes it, "significantly higher than what [she] contemplated at the time of her plea" [Doc. 45 p. 5].

For these reasons, the Court finds that defendant has not shown by clear and convincing evidence that she is unlikely to flee.

### B.     Danger to the Safety of Any Other Person or the Community

Defendant also has not established by clear and convincing evidence that she does not pose a danger to the safety of any other person or the community if released on conditions.  Apart from noting that she is not charged with a violent crime and positing: "Ms. Broussard . . . does not pose a threat to the community" [Doc. 43 p. 1], defendant does not offer any argument or evidence in support of a finding that she poses no such danger.

To be sure, the non-violent nature of her offense is some evidence that defendant does not pose a *physical* danger to any other person or the community if released.  But "the concept of a defendant's dangerousness as used in the [Bail Reform] Act is to be given a broader construction than merely danger of harm involving physical violence." *Vance*, 851

7

Case 3:19-cr-00029-TAV-DCP   Document 46   Filed 06/23/20   Page 7 of 9   PageID #: 344

F.2d at 169 (citation omitted). Indeed, as the government notes, some courts have determined that the "defendant's dangerousness" encompasses the defendant's potential to inflict "pecuniary or economic harm." *Untied States v. Olive*, No. 3:13-48, 2013 WL 1666621, at *2 (M.D. Tenn. Apr. 17, 2013) (quoting *United States v. Madoff*, 316 F. App'x 58, 60–61 (2d Cir. 2009)). And the evidence before the Court, including defendant's offense conduct and her alleged conduct while on pretrial supervision, namely her operating financial advising websites and otherwise working as a financial advisor, raises concern that defendant does pose such a danger to others and the community.

Ultimately, the Court does not find that the non-violent nature of the offense and defendant's naked assertions that she does not pose a danger amount to clear and convincing evidence. Rather, the Court finds, as Judge Poplin found, that "there is no condition or combination of conditions of release that will assure that Defendant will not pose a danger to the safety of any other person or the community or that Defendant is unlikely to abide by any condition or combination of conditions of release" [Doc. 40 p. 3].[2]

---

[2] In support of her motion, defendant also states that she is at "risk for severe illness or death" in light of the COVID-19 pandemic given her age, race, and medical history, and she notes the danger that COVID-19 poses to incarcerated persons in general [Doc. 43 ¶¶ 5–7]. At the outset, the Court notes that, as of June 17, 2020, there are no confirmed cases of COVID-19 amongst the inmates at the Knox County Jail, so defendant's risk of harm is, at the present time, merely speculative. Even if her risk of harm was more concrete, defendant fails to explain how her concerns related to COVID-19 are connected to the issues before the Court. *See* 18 U.S.C. § 3143(a). Specifically, defendant has not suggested—and the Court does not find—that the fact that she may be at some heightened risk of contracting and/or suffering serious harm as a result of contracting COVID-19 while detained has any bearing on whether she is a flight risk or poses a danger if released. For this reason, while the Court sympathizes with defendant's concerns related to COVID-19, it must reject these arguments as immaterial.

### III. Conclusion

In sum, Court finds that defendant's conclusory, two-page motion for release fails to establish "by clear and convincing evidence that [she] is not likely to flee or pose a danger to the safety of any other person or the community if released on conditions." 18 U.S.C. § 3143(a)(1). As such, she cannot be released pending sentencing. For the reasons discussed herein, defendant's motion [Doc. 43] is hereby **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE